UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NUVELL CREDIT CORPORATION, et al.,** | ) ) ) | **CASE NO. 1:07CV3322 & 1:07CV3313** |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| Appellants, | ) ) | |
| v. | ) ) | **OPINION AND ORDER** |
| **JAMIE ALLEN WESTFALL, et al.,** | ) ) ) | |
| Appellees. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the appeal from an Order Denying Objections to Confirmation and accompanying Memorandum of Opinion entered on September 24, 2007 by U.S. Bankruptcy Judge Russ Kendig of the United States Bankruptcy Court, Northern District of Ohio, Eastern Division. For the reasons that follow, the ruling of the Bankruptcy Judge is AFFIRMED.

**I. FACTUAL BACKGROUND**

On May 31, 2005, Jamie Allen Westfall and Angela Ann Westfall ("the Debtors") entered into a transaction to purchase a 2005 Chevrolet Silverado from Jack Matia Chevrolet on a retail installment sales contract that was assigned to Nuvell Credit Corporation ("Nuvell"). As part of this purchase transaction, the Debtors traded in a 2001 Chevrolet Blazer, on which they still owed $3,588.47. The amount still owed on the trade-in ($3,588.47) was financed as part of the purchase, and thus represents the negative equity amount that is the subject of this appeal.

On May 31, 2005, the Debtors also purchased a 2005 Chevrolet Impala from Jack Matia

1

Chevrolet on a retail installment contract, which was assigned to WFS Financial, Inc. ("WFS"). As part of this purchase, the Debtors traded in a 2003 Chevrolet Cavalier, which Debtors had also not yet paid off. The amount still owed on the trade-in ($6,757.62) was financed as part of the purchase of the Impala, and represents the negative equity amount that is the subject of this appeal.

On March 13, 2006, Debtors filed for Chapter 13 bankruptcy and proposed a plan to bifurcate the loans into secured and unsecured components, seeking to avoid paying the negative equity amount on a secured basis. Nuvell and WFS ("the Creditors") pointed to the "hanging paragraph" of 11 U.S.C. § 1325(a), which states that claims in which "the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of filing of the petition, and the collateral for that debt consists of a motor vehicle...acquired for the personal use of the debtor," are protected from bifurcation and cramdown. 11 U.S.C. § 1325(a). Cramdown is the process by which the debtor keeps the collateral over the objection of the creditor and provides the creditor with payments, over the life of the plan, that will total the present value of the collateral.

The Creditors argued they have a purchase-money security interest in the two vehicles that covered the entire obligation incurred at the time of the purchase transaction, including the negative equity, and therefore the entire claim was subject to the hanging paragraph and protected from bifurcation and cramdown. Toby L. Rosen, the Chapter 13 Trustee, disagreed with the Creditors, arguing negative equity is not included in the definition of purchase-money security interest, and thus, the Creditors' claims are subject to cramdown. The Creditors filed objections to confirmation based on their anti-cramdown argument.

In an Amended Memorandum of Opinion entered on May 17, 2007, the Bankruptcy Judge concluded that pursuant to Ohio law, negative equity is not included in a creditor's purchase money security interest as it does not enable a purchaser to acquire rights in the purchased vehicle.  The Bankruptcy Judge further found that under Ohio law, a transformation rule would be applied to transactions like the one at hand where both purchase money and nonpurchase money components exist.  Ohio's transformation rule would transform the entire transaction into nonpurchase money status as a result of the contamination by the nonpurchase money component, thereby eliminating the benefit of the hanging paragraph.

The Bankruptcy Judge requested additional briefing on the issue of whether state or federal law should define the term "purchase money security interest" as it is used in 11 U.S.C. § 1325(a).  After reviewing what he referred to as a "maddeningly inconsistent body of decisions," the Bankruptcy Judge entered a Memorandum of Opinion on September 24, 2007, utilizing a federal understanding of the term "purchase money security interest" to hold negative equity is not included in its definition.

After reviewing state law cases and considering the Comments to the Revised Uniform Commercial Code, the Bankruptcy Judge found Ohio's "transformation rule" too severe.  The Bankruptcy Judge explained that he was not constrained to apply Ohio law, and instead adopted the "dual-status rule" for purposes of the hanging paragraph.  Applying the "dual-status rule," the Bankruptcy Judge found the transactions have purchase money components, which would be secured and not subject to bifurcation, and nonpurchase money components resulting from the negative equity, which would be subject to bifurcation as unsecured claims.  The Bankruptcy Judge explained that application of the "dual-status rule" would have positive implications,

3

including that the rule will result in uniformity, rather than the confusion caused by applying multiple state rules.

Both Nuvell and WFS have appealed from the Order Denying Objections to Confirmation and accompanying Memorandum of Opinion entered by the Bankruptcy Court on September 24, 2007.

## II. LAW AND ANALYSIS

**A.     Standard of Review**

When reviewing a bankruptcy proceeding, "the district court reviews the bankruptcy court's conclusions of law de novo and upholds its findings of fact unless they are clearly erroneous."  *In re: Made in Detroit, Inc.*, 414 F. 3d 576, 580 (6th Cir. 2005); *255 Park Plaza Assocs. Ltd. P'ship v. Conn. Gen. Life Ins. Co.* (*In re 255 Park Plaza Assocs. Ltd. P'Ship*), 100 F. 3d 1214, 1216 (6th Cir. 1996).

**B.     Statutory Framework**

Prior to the adoption of the hanging paragraph, a Chapter 13 debtor could bifurcate a motor vehicle loan under §506(a) of the Bankruptcy Code, treating the obligation as secured up to the value of the vehicle, with the remainder of the claim treated as unsecured.  *GMAC v. Peaslee*, 373 B.R. 252, 255-56 (W.D. N.Y. 2007).  Debtors were able to utilize cramdown and as a result could retain the vehicle and make payments to creditors up to the present value of the vehicle, while the unpaid portion of the debt was eliminated.  *Id.* at 256.

However, the amendment to 11 U.S.C. § 1325(a) known as the hanging paragraph eliminated the availability of cramdown in certain situations.  *Id.*[1]

---

[1] See page 2, *supra*, for the definition.

Creditors generally oppose cramdown because in substituting money for the collateral, courts may underestimate the collateral's market value and appropriate interest rate, or the debtor may fail to make all promised payments, causing the creditor to receive an amount less than the collateral's full value.  *Peaslee, supra*, at 256.

C.      **"Purchase Money Security Interest" is Not Defined**

The Bankruptcy Code does not define the term "purchase money security interest" as it is used for purposes of the hanging paragraph.  *Peaslee, supra*, at 257.  As a result, many courts have looked to state law for clarification of the term.  *See Graupner v. Nuvell Credit Corp.*, 537 F.3d 1295, 1301 (11th Cir. 2008); *Citifinancial Auto v. Hernandez-Simpson*, 369 B.R. 36, 45 (D. Kan. 2007); *In re Acaya*, 369 B.R. 564, 567-69 (Bankr. N.D. Cal. 2007); *In re Stevens*, 368 B.R. 5, 8 (Bankr. D. Neb. 2007); *In re Price*, 363 B.R. 734, 740 (Bankr. E.D.N.C. 2007); *In re Bray*, 365 B.R. 850, 854 (Bankr. W.D. Tenn. 2007).

By looking to state law, courts are able to determine whether the term "purchase money security interest" is defined to incorporate negative equity.  *Graupner, supra*, at 1301 (holding under the Georgia Motor Vehicle Sales Act and Georgia UCC, cash sales price includes negative equity); *Peaslee, supra*, at 260 (finding under New York's Motor Vehicle Retail Installment Sales Act, the "cash sale price...may include the unpaid balance of any amount financed under an outstanding motor vehicle loan agreement"); *In re Petrocci*, 370 B.R. 489, 501 (Bankr. N.D.N.Y. 2007)(holding the term "price," as used in New York's UCC, be given the meaning set forth in the New York Motor Vehicle Retail Installment Sales Act's definition of "cash sales price," which includes negative equity).

D.      **Lack of Consensus Regarding Whether Negative Equity is Included in the Term "Purchase Money Security Interest"**

5

As a result of the inconsistent statutory treatment of negative equity among states, courts come to different conclusions in determining whether negative equity is included in a creditor's purchase money security interest.  In some cases, courts have found negative equity in a vehicle is part of the purchase money security interest, and thus creditors are entitled to the protections of the hanging paragraph.  *See, e.g. Graupner, supra,* at 1301; *Peaslee, supra,* at 261; *In re Ford*, 387 B.R. 827 (Bankr. D. Kan. 2008); *In re Austin*, 381 B.R. 892  (Bankr. D. Utah 2008); *In re Dunlap*, 383 B.R. 113 (Bankr. E.D. Wis. 2008); *In re Vinson*, 391 B.R. 754 (Bankr. D.S.C. 2008); *In re Schwalm*, 380 B.R. 630 (Bankr. M.D. Fla. 2008); *In re Weiser*, 381 B.R. 263 (Bankr. E.D. Mo. 2007); *In re Brei,* 2007 Bankr. LEXIS 3924 (Bankr. D. Ariz. 2007); *In re Burt*, 378 B.R. 352 (Bankr. D. Utah 2007); *In re Bradlee*, 2007 Bankr. LEXIS 3863 (Bankr. W.D. La. 2007); *In re Watson*, 2007 Bankr. LEXIS 3394 (Bankr. E.D. Cal. 2007); *In re Wall*, 376 B.R. 769 (Bankr. W.D.N.C. 2007); *In re Cohrs,* 373 B.R. 107 (Bankr. E.D. Cal. 2007); *In re Petrocci, supra*; *GMAC v. Horne*, 390 B.R. 191 (Bankr. E.D. Va. 2008); *Nuvell Credit Co., LLC v. Muldrew,* 2008 U.S. Dist. LEXIS 77752 (E.D. Mich. 2008).

Courts that hold negative equity is part of the purchase money security interest often find there is a close nexus between the acquisition of the collateral and the secured obligation, explaining that payment of the trade-in debt is "tantamount to a prerequisite to consummating the sales transaction."  *Grauper, supra*, at 1302.  Because negative equity is "inextricably intertwined with" and an "integral part of" the sales transaction, it is considered part of the purchase price of the new vehicle.  *Id.*

Other courts have held the payment of negative equity is not value given to enable the purchase of a new vehicle and therefore is not encompassed by the term "purchase money

security interest." *See, e.g. In re Munzberg*, 388 B.R. 529 (Bankr. D. Vt. 2008); *In re Callicott*, 386 B.R. 232 (Bankr. E.D. Mo. 2008); *In re Jernigan*, 2008 Bankr. LEXIS 1159 (Bankr. E.D.N.C. 2008); *In re Look*, 383 B.R. 210 (Bankr. D. Me. 2008); *In re Wear*, 2008 Bankr. LEXIS 208 (Bankr. W.D. Wash. 2008); *In re Johnson*, 380 B.R. 236 (Bankr. D. Or. 2007); *In re Tuck*, 2007 Bankr. LEXIS 4226 (Bankr. M.D. Ala. 2007); *In re Conyers*, 379 B.R. 576 (Bankr. M.D.N.C. 2007); *In re Hayes*, 376 B.R. 655 (Bankr. M.D. Tenn. 2007); *In re Price, supra*; *Hernandez-Simpson, supra*; *In re Bray, supra*; *In re Mitchell*, 379 B.R. 131 (Bankr. M.D. Tenn. 2007); *In re Sanders*, 377 B.R. 836 (Bankr. W.D. Tex. 2007); *In re Blakeslee*, 377 B.R. 724 (Bankr. M.D. Fla. 2007); *In re Acaya, supra*; *In re Vega*, 344 B.R. 616 (Bankr. D. Kan. 2006).

Courts which hold negative equity is not included in a creditor's purchase money security interest emphasize that "negative equity is an antecedent debt," in that it represents an amount financed on a previous car that remained unpaid when the debtor purchased a new car. *In re Munzberg, supra*, at 539. These courts explain that "funds loaned to satisfy the negative equity are not a component of the price of the collateral or the value given to enable the debtor to acquire rights in the collateral," and are significantly different from expenses which are typically considered part of a motor vehicle sale. *Hernandez-Simpson, supra*, at 47.

Neither the United States Court of Appeals for the Sixth Circuit nor the Northern District of Ohio have yet addressed the issue of whether negative equity is included in the term "purchase money security interest" for purposes of the hanging paragraph.

**E.    Application of Federal Versus State Law in Defining "Purchase Money Security Interest"**

Some courts explicitly state that the determination of whether a creditor has a purchase money security interest securing a debt is a matter of state law. *See Hernandez-Simpson, supra*,

7

at 45.  Other courts have recognized an alternative position available, that is, development and application of a federal rule, but have rejected that alternative, finding state law to be the proper source for defining "purchase money security interest." *In re Munzberg, supra*, at 536; *In re Johnson, supra*, at 240.

However, utilizing a federal understanding of the term is not outside the Bankruptcy Judge's discretion.  Official Comment 8 to Section 9-103 of the UCC specifically states that "[t]he Bankruptcy Code does not expressly adopt the state law definition of 'purchase money security interest.'  Where federal law does not defer to this Article, this Article does not, and could not, determine a question of federal law."  U.C.C. § 9-103 (2005), Official Comment 8.  Comment 8 indicates that usage of the term "purchase money security interest" under Article 9 of the UCC is not intended to preempt or determine the definition of the term under other statutes, including the Bankruptcy Code.  *In re Johnson, supra*, at 240.  As a result, the Bankruptcy Judge determined that using a state law definition of purchase money security interest could abridge federal policies, especially since the state law may not have been intended for federal application in regard to the negative equity issue.  Although not typical of other district and bankruptcy court decisions, application of a federal understanding of the term is preferable to utilizing state law.     Rejecting application of state law by the Bankruptcy Court finds further support in a Sixth Circuit decision addressing interpretation of 11 U.S.C. § 1325(a).  Although negative equity was not at issue, the Court was asked to interpret the hanging paragraph in order to determine whether a creditor is entitled to a deficiency judgment for the remaining indebtedness after the debtor surrenders the vehicle pursuant to 11 U.S.C. § 1325(a).  *AmeriCredit Financial Services v. Long, et al.,* 519 F.3d 288, 290 (6th Cir. 2007).  Although the

Sixth Circuit was unable to reach a majority decision, Judge Gilbert S. Merritt, writing the lead opinion, stated "by the adoption of § 506 and § 1325, Congress has demonstrated an intent to federalize and make uniform the treatment of purchase-money mortgages in bankruptcy." *Id.* at 291. Judge Merritt explained that a uniform national rule should be adopted and substituted for the widely varying procedural and substantive rules provided by the states. *Id.* Judge Merritt's explicit rejection of applying state law in interpreting federal bankruptcy law lends support to the decision of the Bankruptcy Judge to utilize a federal understanding of "purchase money security interest" in order to generate a uniform federal rule.

Recently, the United States District Court for the Eastern District of Michigan, a court located within the Sixth Circuit, held negative equity is included in the definition of "purchase money security interest" as utilized by the hanging paragraph; and as a result, creditors are protected from bifurcation and cramdown of their claims. *Muldrew, supra*, at *1-2. Explaining that Congress acts "with an awareness of pertinent existing law and its treatment of related issues," the district court looked to the existing statutory environment in which Congress legislated at the time it enacted the hanging paragraph to determine the intended scope of the term "purchase money security interest." *Id.* at *25-26. More specifically, the *Muldrew* court looked to the federal Truth in Lending Act ("TILA"), Article 9 of the UCC, and the Michigan Motor Vehicle Sales Finance Act ("MVSFA") to hold negative equity is included in the term. *Id.* at *26.

Although it is important to consider the *Muldrew* decision because it is Sixth Circuit authority, the Northern District of Ohio is not bound to follow it. The *Muldrew* court explained that it was trying to ascertain a Congressional understanding of purchase money security interest;

yet it relied on certain sources, including state law, specifically the MVSFA, and the UCC, which Bankrupcty Judge Kendig would specifically reject. *See Id.* at *26. This Court finds the careful, reasoned analysis of Bankruptcy Judge Kendig is a more compelling response to the negative equity issue, and thus, will not alter its approach in light of the *Muldrew* decision.

For the foregoing reasons, the Bankruptcy Judge was warranted in finding and applying a federal understanding of the term "purchase money security interest" which did not incorporate negative equity into a creditor's purchase money security interest for the purposes of the hanging paragraph.

### F.     Transformation Rule Versus Dual-Status Rule: Bankruptcy Court is Not Constrained by Ohio Law

If a court determines that negative equity is not included in a creditor's purchase money security interest, the court must then decide whether to apply a transformation rule or dual-status rule when a single security interest includes both purchase money components and nonpurchase money components. The transformation rule provides that a security interest that is part purchase-money and part non-purchase money loses its purchase money character and is completely transformed into a non-purchase money security interest. *In re Munzberg, supra*, at 544. Alternatively, the dual-status rule allows the court to treat the purchase money portion as purchase-money and thus protected by the hanging paragraph, and the non-purchase money portion as non-purchase money and thus, unprotected from cramdown and bifurcation. *Id.* Courts are split on which rule to apply. *Id.* at 545.

The Bankruptcy Judge found that because the court was not constrained to apply Ohio law, it could adopt a dual-status rule, rejecting the transformation rule set forth in Ohio law. It follows from the earlier discussion that if the Bankruptcy Judge uses a federal understanding in

interpreting the hanging paragraph, with which this Court agrees, the Bankruptcy Judge is justified in rejecting state law in determining which rule to apply.

### III. CONCLUSION

For the reasons articulated above, the Order Denying Objections to Confirmation and accompanying Memorandum of Opinion entered on September 24, 2007 by U.S. Bankruptcy Judge Russ Kendig of the United States Bankruptcy Court, Northern District of Ohio, Eastern Division is AFFIRMED.  Further, the appeals in Case No. 1:07CV3313 and Case No. 1:07CV3322 are DISMISSED.

**IT IS SO ORDERED.**

**DATE: October 24, 2008**

_____
**Christopher A. Boyko**
**U.S. District Court Judge**